LIVINGSTON VS. LITTELL and another.

LIVINGSTON
v.
LITTELL et al.

Sec. 5, chap. 107, R. S. 1858, which declares that "every assignment of goods and chattels, unless the same * * be followed by an actual and continued change of possession * * shall be presumed to be fraudulent and void as against the creditors of the person making the assignment," &c., does not apply to an assignment of *choses in action*.

The holder of notes payable to them or order, or bearer, assigned them for value, by a separate instrument, to A, who left them with the payees as his agents, for collection. While thus in possession, the payees assigned the notes to B, as security for a debt they owed him. The plaintiff, who claimed under the assignment to A, brought an action against B for a conversion of the notes. There was some evidence that before the assignment to B, one of the payees had informed him of the prior assignment to A. *Held*, that the circuit court erred in non-suiting the plaintiff.

The assignment of the notes to A, not being within sec. 5 of chap. 107, if it was fraudulent as to creditors, the burden was on the defendant to show it.

Whether, if that section did apply to the assignment, mere proof that it was made for value, without showing that the value was adequate, or explaining why the notes were left in the assignor's possession, would have been sufficient rebutting evidence to require the submission of the question of fraud to a jury, it was unnecessary in this case to determine.

APPEAL from the Circuit Court for *Milwaukee* County.

The case stated in the complaint was this : On the 22d of June, 1859, Converse & Wheelock, who were partners, and holders of fourteen notes amounting in all to about $125.00, each of which was payable to them, or " order," or " bearer," assigned them, for value received, to Green & Healy, by an instrument in these words : "For value received of Green & Healy, we hereby assign, sell and set over all the accounts and notes belonging to the firm of Converse & Wheelock, and authorise Green & Healy to sue for and collect the same in our name or otherwise, &c. CONVERSE & WHEELOCK." Green & Healy left the notes in the possession of Mr. Wheelock, as their agent, for collection, and on the 25th of June, for value, assigned their interest in said notes to the plaintiff, *Livingston*. On or about the same day, the defendants, *Littell & Baker*, took the notes from the possession of Wheelock, and converted them to their own use.—The answer denied the assignment of the notes to Green & Healy, and averred that on or about the 2d of July, 1859, Converse & Wheelock, then having said notes in their possession, assigned and

delivered all of them (except one for about $19.00) to the defendants, to secure the payment of a pre-existing debt of over $200.00.

On the trial, Mr. Healy testified that Converse & Wheelock, being indebted to his firm in the sum of $500.00 or $600.00, made to them the assignment which is set forth in the complaint; and that about the 25th of June, 1859, his firm sold and assigned the book accounts therein referred to, to the plaintiff, in payment of a debt they owed him. Mr. Wheelock (whose deposition was taken on behalf of the defendants) testified, that the defendants got all the notes mentioned in the complaint, except two. "We assigned the notes to them as collateral security for a note we owed them. I think I told Mr. Baker, before I assigned the notes to him, that they were assigned to Green & Healy. After I told Baker of the assignment to Green & Healy, he was satisfied to take the notes. I think we owed Littell & Baker about $227, a bona fide debt then due. I gave them no other security."

The defendants moved for a non-suit, on the ground that it appeared by the pleadings and proofs that the notes in controversy were payable to bearer, and the delivery of them to the defendants by Wheelock passed the property in them to the defendants; and the court sustained the motion.

J. V. V. Platto, for appellant:

The respondents had notice of a prior assignment of the notes, and that Wheelock held them as agent for collection. He therefore acquired no title. Edwards on Bills, 252; Story on Notes, § 132; Paley on Agency, 233, and Note (A); Bay vs. Coddington, 5 Johns. Ch. R., 54, 57; Livingston vs. Dean, 2 id., 479; Whitney vs. State Bank, 7 Wis., 625.

T. L. Ogden, for respondents:

1. The assignment to Green & Healy was void as to creditors, because not accompanied or followed by an actual and continued change of possession. R. S., chap. 107, sec. 5; Kent's Com., 251; 1 Cranch, 309; 1 Powell on Mort., 23. There having been no delivery of the notes to Green & Healy, it was for the plaintiff to show that the assignment of them was made in good faith. The proof shows that all the

January Term, 1862.

LIVINGSTON
v.
LITTELL et al.

accounts and notes were assigned for between $500 and $600. They may have been worth thousands. To relieve the assignment from the condemnation of the statute, the plaintiff should have shown that it was made for an adequate consideration. *Sturtevant v. Ballard*, 9 Johns., 337; *Stoddard v. Butler*, 20 Wend., 507. 2. In the absence of evidence to show the intent of the parties in leaving the notes in the hands of the debtors, or any excuse for it, the law presumes they were left with the intent of enabling the debtors to defraud their creditors. *White v. Cole*, 24 Wend., 116; 2 Kent's Com., 530. 3. There is no difference whether the notes were payable to bearer or were indorsed in blank; in either case, by the law merchant, they were only transferable by delivery. Chitty on Bills, 252; *Gibson vs. Minet*, 1 Hen. Black., 605; *King vs. Lambton*, 5 Price, 428. 4. The testimony of Mr. Wheelock that he thought he told one of the respondents that the notes were assigned to Green & Healy, is no proof of notice; they might have been so assigned, and yet have become again the property of Converse & Wheelock; and the respondents might infer that such was the case from the fact that Converse & Wheelock were willing to transfer the notes to them. Moreover if the assignment to Green & Healy was fraudulent, no notice could alter its character.

May 15.

*By the Court*, PAINE, J. This action was brought for the conversion of certain notes. It appeared from the pleadings and proofs offered by the plaintiff, that the firm of Converse & Wheelock, to whom the notes originally belonged, assigned them for value to Green & Healey, the latter however leaving them in possession of the assignors as their agents to collect. Under this assignment the plaintiff claims. Subsequently Converse & Wheelock assigned them to the defendants as collateral security on an indebtedness, and delivered possession. One of the assignors, who testified for the plaintiff, said that he thought he told the defendants of the former assignment, before the assignment to them. Upon this state of facts the court non-suited the plaintiff, upon the ground, as it is stated in the bill of exceptions, "that the notes were payable to bearer, and as such, delivery to the

defendants by Wheelock vested the said property in said notes in the defendants."

We are unable to see how the non-suit can be sustained upon that ground. For if the notes had previously been transferred in a valid manner to Green & Healy, and the defendants had notice of that transfer, certainly the mere fact of negotiability would not vest the title in the defendants on the second transfer, although Wheelock still had them in his possession. It is only the *bona fide* purchaser of negotiable paper who is protected. And one who knows that another has possession of a note merely for collection, and then takes an assignment of it to himself as security for an antecedent debt of that agent, surely gets no title. And the jury would have been warranted in finding from the evidence, that the defendants, previously to taking the notes, were notified of the previous assignment.

If the non-suit could be sustained at all, it would be upon the ground relied on by the respondent's counsel, which is that the transfer to Green & Healy was to be deemed fraudulent and void by reason of the possession having been left with the assignors, according to sec. 5, chapter 107, R. S., 1858, relating to fraudulent conveyances &c., and no sufficient proof having been offered by the plaintiff to rebut the presumption of fraud, to warrant the court in submitting that question to the jury. If this sale was within that section, the question, whether the court ought, upon the evidence, to have submitted to the jury the question of fraud in fact, would be of considerable interest. The right to rebut the legal presumption of fraud in such cases seems very clear, from the language of the statute, and was established by the court of errors in New York, in its celebrated controversy with the supreme court upon that subject. *Smith & Hoe vs. Acker*, 23 Wend., 653; *Hanford vs. Artcher*, 4 Hill, 271. But this question of fact was undoubtedly left to be tried like other questions of fact, and if the party on whom the burden rested of rebutting the legal presumption of fraud, did not offer proof of such character as entitled him to have the question submitted to the jury, the court would not be bound to submit it. See opinion of WALWORTH, Chancellor,

January Term,
1862.

LIVINGSTON
v.
LITTELL et al.

in *Hanford vs. Artcher*, 4 Hill, 281. What degrees and kinds of proof would be sufficient does not seem to have been very accurately stated in those cases. There was no evidence given here to rebut the presumption, except that the sale was for a valuable consideration. There was nothing to show that it was adequate, and nothing to explain the leaving of the notes in the possession of the vendors. Whether something further upon these points would not have been necessary, in order to require the question to be submitted to the jury, would have been a question deserving a very careful examination. But we shall not examine it here, for the reason that we think the sale in this case was not within the provisions of the section referred to. That section relates by its terms to the sale of "goods and chattels." Whether notes, shares, and other evidences of debt are within its meaning, is a question upon which there has been some diversity of opinion. Browne on Statute of Frauds, sec. 295, *et seq.*, and cases cited. After considerable discussion, the rule has been established in England that such evidences of debt are not within the provisions of the corresponding section in their statute. And although some cases are referred to in which the supreme court of Massachusetts has held otherwise, yet we think there is much force in the comments of the learned author, in section 298, where he intimates that the doctrine of these cases cannot be regarded " as entirely free from doubt and difficulty." At all events we think, upon comparing the several provisions of our statute together, the only conclusion that can be arrived at, is that established by the English cases. Subdivision 14, sec. 1, chap. 5, R. S. 1858, provides that the words " personal property" shall include " money, goods, chattels, things in action, and evidences of debt." Sec. 1, chap. 107, avoids conveyances of goods, chattels, *or things in action*, made in trust, &c. Sec. 3 contains the same language. Then, after having thus established a limited construction for the words "goods and chattels," exclusive of "things in action," the legislature, in section 5, carefully drop the latter phrase, and speak of " goods and chattels" only. This seems to us to show conclusively that they did not intend to express by those words only in that

section, all that they had before expressed by them and the additional phrase " things in action." But having once established the distinction between the two, they must be presumed to have used their language throughout the chapter with reference to that distinction. This construction is also strongly supported by considerations growing out of the difference between choses in action and ordinary tangible property, which is more capable of delivery, and the use and possession of which is of some value.

If policy requires the provisions of section 5 to be extended to "things in action," as contended by the cases in Massachusetts, it will be very easy for the legislature so to amend it. We do not feel authorized, upon that ground, to extend it to that class of property, when the legislature carefully excluded from it those words which they deemed necessary to describe such property in the other sections.

The sale, therefore, not being within that section, if it was fraudulent as to creditors, the burden was on the defendants to show it.

The judgment is reversed, with costs, and the cause remanded for a further trial.